**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

EVANSTON INSURANCE COMPANY,

        Plaintiff,

v.                                    Case No. 6:15-cv-486-Orl-37GJK

DIMUCCI DEVELOPMENT
CORPORATION OF PONCE INLET,
INC. and TOWERS GRANDE
CONDOMINIUM ASSOCIATION,

        Defendants.

_____

**ORDER**

This cause is before the Court on the following:

(1)    Defendant/Counter-Plaintiff, DiMucci Development Corporation of Ponce Inlet, Inc.'s, Motion for Reconsideration of Order Granting Summary Judgment on Behalf of Evanston Insurance Company and Incorporated Memorandum of Law (Doc. 110), filed September 19, 2016;

(2)    Plaintiff, Evanston Insurance Company's Response in Opposition to DiMucci Development Corp. of Ponce Inlet, Inc.'s Motion for Reconsideration of Order Granting Summary Judgment on Behalf of Evanston Insurance Company and Incorporated Memorandum of Law (Doc. 111), filed October 3, 2016;

(3)    Evanston Insurance Company's Response to this Court's Order Requiring Supplemental Briefing (Doc. 117), filed November 8, 2016; and

(4)    Defendant/Counter-Plaintiff, DiMucci Development Corporation of Ponce Inlet, Inc.'s Supplemental Brief on Application of the "Your Work" Exclusion

to DiMucci's Claim for Defense and Indemnity (Doc. 118), filed November 8, 2016.

## BACKGROUND

The primary insurance coverage dispute in this declaratory judgment action[1] ("**Coverage Dispute**") is whether the claims asserted by Towers Grande Condominium Association ("**Towers**") against DiMucci Development Corp. of Ponce Inlet, Inc. ("**DiMucci**") in *Towers Grande Condominium Association, Inc. v. DiMucci Development Corporation of Ponce Inlet, Inc., Wayne's Roofing & Sheet Metal*, Case No. 2012 33194 CICI 32 ("*Towers* **Case**")[2] are covered under any of three commercial general liability ("**CGL**") policies ("**Policies**") issued by a predecessor of Evanston Insurance Company ("**Plaintiff**").[3] In an Order dated **September 13, 2016** ("**SJ Order**"), the Court determined that the claims asserted by Towers are covered, but such coverage is subject to the "**Your Work Exclusion**" ("**Your Work Ruling**"); thus, Plaintiff had no duty to defend ("**No Defense Declaration**"). In this Order, the Court reconsiders the Your Work Ruling and No Defense Declaration. Given the Court's determination that such rulings were in error, the Court also addresses Plaintiff's claim that it is relieved of any duty to defend

---

[1] Declaratory judgment actions are "a valuable procedure for the resolution of insurance coverage disputes." *See Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10–15 (Fla. 2004).

[2] The *Towers* Case is pending in the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida. (*See* Doc. 42; *see also* 42-1 ("**Towers Complaint**").)

[3] The Policies are: (1) new policy number 03GLP1007086 ("**2003 Policy**"); (2) new policy number 04GLP1007428 ("**2004 Policy**"); and (3) renewal policy number 05GLP1007428 ("**2005 Policy**"). (*See* Docs. 42-5, 42-6, 42-7.) Each of the Policies covered a one-year period ("**Policy Period**"): (1) the 2003 Policy Period commenced on **August 8, 2003** (Doc. 42, ¶¶27, 43; Doc. 54, ¶¶27, 43); (2) the 2004 Policy Period commenced on **September 23, 2004** (Doc. 42, ¶29; Doc. 54, ¶29); and (3) the 2005 Policy Period commenced on **September 23, 2005** (Doc. 42, ¶31; Doc. 54, ¶31).

because DiMucci allegedly breached the cooperation provisions of the "Self-Insured Retention Endorsement" ("**SIR Endorsement**").

## I.     The Pleadings

On **September 17, 2014**, Plaintiff initiated this action in the U.S. District Court for the Northern District of Illinois ("**Illinois Court**") (Doc. 1), and the Illinois Court transferred the action to this Court in **March 2015**. (*See* Doc. 23; *see also* Doc. 42, ¶24; Doc. 54, ¶24.) Three months later, Plaintiff filed its eleven-count Amended Complaint, which seeks judicial declarations that Illinois law applies to the Coverage Dispute (Doc. 42, ¶¶87–90 ("**COL Claim**")) and Plaintiff owes no duty to defend DiMucci in the *Towers* Case because:

(1)    DiMucci is not an "insured" under the 2003 Policy (*see id.* ¶¶27–28, 42–44 ("**Insured Identity Claim**"));

(2)    DiMucci breached the SIR Endorsement by failing to cooperate and allow Plaintiff to control DiMucci's defense in the *Towers* Case (*see id.* ¶¶81–86 ("**SIR Claim**"));

(3)    No "**Occurrence**" is alleged in the Towers Complaint (*see* Doc. 42, ¶¶45–49 ("**Occurrence Claim**"));

(4)    No "**Property Damage**" is alleged in the Towers Complaint (*see* Doc. 42, ¶¶50–54 ("**Property Damage Claim**")); and

(5)    Six exclusions bar coverage for the claims asserted by Towers ("**Exclusion Claims**") (*see id.* ¶¶55–59 (Prior Incident(s) and Defects Exclusion); *id.* ¶¶60–63 (Mold Exclusion); *id.* ¶¶64–67 (Subsidence Exclusion); *id.* ¶¶68–71(Contract Liability Exclusion); *id.* ¶¶72–76 (Contract Breach Exclusion); *id.* ¶¶77–80 (Independent Contractors Conditional Endorsement).[4]

---

[4]The Court bifurcated and stayed Plaintiff's corresponding claims related to the duty to indemnify ("**Indemnification Claims**"). (*See* Doc. 95).

Both Towers and DiMucci filed Answers and alleged numerous Affirmative Defenses ("**AD**"). (*See* Docs. 54, 55.) DiMucci also filed a Counterclaim (Doc. 55), which sought damages for Plaintiff's alleged breach of the Policies (*see id.* at 20–21, ¶¶ 44–49 ("**Breach of Contract CC**")), and judicial declarations that: (1) Florida law applies to the Coverage Dispute (*see id.* at 18–19, ¶¶ 37–43 ("**COL CC**")); (2) this Court is the proper forum for this action (*see id.* at 16–17 ("**Forum CC**")); and (3) Plaintiff owes DiMucci a defense in the *Towers* Case (*see id.* at 17–18, ¶¶ 31–36 ("**Duty to Defend CC**")). Finally, Plaintiff filed a reply to the Counterclaim ("**CC Reply**"), which included thirty affirmative defenses ("**CCAD**"), including that Plaintiff "has no duty to defend or indemnify DiMucci pursuant to the "'your work' exclusion" in the Policies ("**Your Work CCAD**"). (*See* Doc. 56, p. 8.)

## II.    Summary Judgment Briefing

Before conducting discovery, the parties filed cross-motions for summary judgment. (*See* Docs. 69, 72; *see also* Doc. 108, p. 9, n.9.) Relying exclusively on Illinois law, Plaintiff sought summary judgment in its favor on three claims—the COL, Occurrence and Property Damage Claims. (*See* Doc. 72 ("**Plaintiff's SJ**").) Relying on Florida law, DiMucci sought summary judgment in its favor on every claim asserted in the Amended Complaint (*see* Doc. 69 ("**DiMucci's SJ**")).

In its response ("**Plaintiff's Response**"), Plaintiff reiterated that Illinois law applies, and: (1) abandoned the Insured Identity Claim (Doc. 81, p. 19 (conceding that DiMucci is an insured); (2) contended that DiMucci's arguments concerning Plaintiff's Exclusion Claims should be disregarded because such claims are moot (*id.*); and (3) argued that it

should prevail on the SIR Claim because Plaintiff fully complied with its requirements under the Policies while DiMucci violated the SIR Endorsement (*id.* 6–13). In its response ("**DiMucci's Response**"), DiMucci argued that the Court should deny Plaintiff's SJ because Florida law applies and Plaintiff had not filed a "shred" of evidence. (*See* Doc. 77.) Neither party filed a reply.[5]

## III.   The SJ Order

In the SJ Order, the Court held that: (1) the insurance laws of Florida—not Illinois— control the Coverage Dispute (*id.* at 8–14, 24 ("**COL Ruling**")); (2) the factual allegations of the Towers Complaint show both an Occurrence and Property Damage (*see id.* at 17– 19 ("**Occurrence Ruling**")); *id.* at 19–21 ("**Property Damage Ruling**")); (3) none of the exclusions raised in the Exclusion Claims are triggered by the allegations of the Towers Complaint (*id.* at 22, n.17 ("**Exclusion Claims Ruling**")). Based on these Rulings, the Court determined that Plaintiff's duty to defend DiMucci was triggered by the Towers Complaint ("**Duty to Defend Ruling**"). Nonetheless, the Court ultimately declared that Plaintiff had no duty to defend DiMucci ("**No Defense Declaration**") because the Your Work Exclusion bars any coverage under the Policies. (*See id.* at 22–24 ("**Your Work Ruling**")).[6]

## IV.   The Reconsideration Motion

Less than a week after issuance of the SJ Order, DiMucci moved for

---

[5](*Cf.* Doc. 36, p. 6, Part II.H.1. (allowing reply briefs).)
[6]The Court also directed the Clerk to: (a) enter judgment in favor of Plaintiff on the Duty to Defend CC (*see* Doc. 108, p. 24, ¶3); (b) enter judgment in favor of  DiMucci on the COL Claim, the COL CC, and the Insured Identity, Occurrence, and Property Damage Claims (*id.* at 25, ¶4); and (c) close this action (*id.* ¶6).

reconsideration ("**Reconsideration Motion**").[7] (*See* Doc. 110.) DiMucci argued that the Court should alter or amend the SJ Order and declare that Plaintiff owes DiMucci a defense in the *Towers* Case because the Your Work Exclusion was not properly before the Court for resolution. DiMucci further argued that even if the Your Work Exclusion were properly raised in the pleadings and addressed in the SJ briefing, the Court erred by failing to require that Plaintiff meet its heavy burden to establish that the Towers Complaint alleges "facts that clearly bring the entire case within" the Your Work Exclusion. Finally, DiMucci argued that the Court did not properly address the subcontractor exception to the Your Work Exclusion ("**SUBC Exception**"). (*See id.*)

Plaintiff responded that the Court should deny the Reconsideration Motion because: (1) DiMucci failed to meet the standard to justify reconsideration; (2) the Court properly ignored allegations in the Towers Complaint concerning DiMucci's co-defendant, Wayne's Roofing & Sheet Metal ("**Wayne's**"); and (3) because the Towers Complaint "only alleges damage to 'property that was the subject of the construction project itself,'" the Your Work Ruling and No Defense Declaration were correct. (*See* Doc. 111 ("**Reconsideration Response**").)

On **October 20, 2016**, the Court conditionally granted the Reconsideration Motion, vacated the SJ Order, and directed additional briefing from the parties "as to the applicability of the Your Work Exclusion" and the significance of allegations in the Towers Complaint concerning damages sought from Wayne's and on behalf of a class of condominium owners. (*See* Doc. 115 ("**October Order**").) Both parties then timely filed

---

[7]DiMucci also filed a timely Notice of Appeal (Doc. 112), which the U.S. Court of Appeals for the Eleventh Circuit dismissed for lack of jurisdiction on **December 2, 2016** (Doc. 119).

their supplemental briefing (*see* Doc. 117 ("**Plaintiff's Brief**"); Doc. 118 ("**DiMucci's Brief**")), and the matter is ripe for adjudication.

As directed in the October Order, DiMucci's Brief focuses exclusively on the Your Work Ruling and the SUBC Exception. (*See* Doc. 118.) Based on specifically-identified allegations from the Towers Complaint—including allegations related to Wayne's— DiMucci argued that: (1) Plaintiff cannot show that the Your Work Exclusion applies; and (2) in any event, the SUBC Exception nullifies the Your Work Exclusion. (*See id.* at 2–3.) Although Plaintiff's Brief focused less on the SUBC Exception and the Your Work Ruling,[8] Plaintiff did argue that:

> (1) the Your Work Exclusion applies because the Towers Complaint "only alleges damage to DiMucci's work caused by DiMucci's work" (Doc. 117, pp. 7–8; Doc. 111, pp. 6–9);

> (2) the SUBC Exception does not apply because— focusing solely on the allegations concerning DiMucci—the Towers Complaint provides no express allegations that DiMucci used subcontractors (Doc. 117, pp. 8–9); and

> (3) Even if the Court finds that Plaintiff owed DiMucci a defense, Plaintiff is relieved of such duty due to DiMucci's breach of the SIR Endorsement (*id.* at 9).

## V.   Federal Rules of Civil Procedure 59(e)

---

[8]The bulk of the Plaintiff's Brief concerned Plaintiff's arguments that the Occurrence and Property Damage Rulings were erroneous. (*See* Doc. 117, pp. 1–7). The Court declines to address these arguments because: (1) Plaintiff did not timely request reconsideration of the Occurrence and Property Damage Rulings; (2) the Court did not invite briefing on these issues (*see* Doc. 115); and (3) such arguments largely restate arguments from Plaintiff's Response. *See U.S. Equal Emp't Opportunity Comm'n v. St. Joseph's Hosp., Inc.*, 842 F.3d 1333, 1337, 1349 (11th Cir. 2016) (noting that courts should not reconsider their prior orders based on "arguments or presentation of legal theories, arguments or facts" that were or could have been raised earlier)).

Because DiMucci filed the Reconsideration Motion within twenty-eight days of the SJ Order: (1) Federal Rule of Civil Procedure 59(e) controls;[9] and (2) the Court is afforded discretion to address clear error or manifest injustice.[10] Here, the DiMucci Brief elaborated on its arguments that the Your Work Ruling is erroneous and unfairly prejudicial to DiMucci because the Your Work Exclusion was not properly raised by the parties. (*See* Doc. 118, pp. 7, 8, 9; *see also* Doc. 110, p. 2 nn.1 & 4.) Although Plaintiff does not dispute that its Amended Complaint included no claim based on the Your Work Exclusion, it contends that the parties sufficiently discussed such exclusion in the SJ Briefing. (*See* Doc. 111; *see also* Doc. 117.)

Upon reconsideration, the Court finds that it did not err by *raising* the Your Work Exclusion in the SJ Order because the matter was raised in the pleadings—specifically, the Your Work CCAD.[11] (*See* Doc. 56, p. 8.) Nonetheless, the Court did err in finally *resolving* the Your Work CCAD because: (1) the parties' limited discussion of the Your Work Exclusion in the SJ Briefing was both insufficient and obtuse; (2) the Court should have given DiMucci notice before entering summary judgment against it based on a legal theory and arguments not properly and explicitly raised by the parties in their

---

[9] *See* Fed. R. Civ. P. 59(e); *see also U.S. v. E. Air Lines, Inc.*, 792 F.2d 1560, 1562 (11th Cir. 1986) (noting that the prior version of Rule 59(e) applies when a motion is filed within ten days of judgment).

[10] *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 n.5 (11th Cir. 1993); *see also Lugo v. Sec'y, Fla. Dep't of Corrs.*, 750 F.3d 1198, 1210 (11th Cir. 2014); *Lawson v. Singletary*, 85 F.3d 502, 507 (11th Cir. 1996) (reversing district court's denial of reconsideration given requirements of justice).

[11] The Court rejects DiMucci's contention that the Court should not have considered the Your Work Exclusion because Plaintiff omitted its ninth CCAD from the Joint Pretrial Statement. (*See* Doc. 118, p. 8 n.2.) The Joint Pretrial Statement was filed after the SJ briefing (*see* Doc. 106); thus, it did not control the SJ Order and it does not control the Court's reconsideration of the SJ Order.

SJ Briefing;[12] and (3) due to the insufficient briefing and lack of notice, the SJ Order included clear error, which is properly addressed in accordance with Rule 59(e).

## VI.    The Duty to Defend

As discussed in the SJ Order, under Florida law, the test for determining whether an insurer owes a duty to defend is resolved by comparing the facts alleged in the underlying complaint against the coverage provided under the policy terms.[13] (*See* Doc. 108, pp. 7, 16–17 (discussing Florida's "**Eight-Corners Rule**").) If the factual allegations "fairly and potentially bring the suit within policy coverage," then the duty to defend is triggered,[14] and if the allegations "'leave any doubt regarding the duty to defend,'" courts must resolve such doubt "'in favor of the insured requiring the insurer to defend.'"[15]

### THE YOUR WORK EXCLUSION & THE SUBC EXCEPTION

Here, the Court previously determined that Plaintiff does owe DiMucci a duty to defend it in the *Towers* Case.[16] (*See supra* at 2, 5 (discussing Duty to Defend Ruling).)

---

[12]*See Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) (noting that our adversarial system does not allow district courts to raise arguments "neither made nor advanced by the parties").

[13]*See J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 923, 926 (11th Cir. 2014); *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008) (The duty to defend rests on "the legal facts and theories alleged in the pleading and claims against the insured."); *see also Jones v. Fla. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443 (Fla. 2005).

[14]*See First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 782 (11th Cir. 2008) (quoting *Jones*, 908 So. 2d at 442–43); *Lime Tree Village Cmty. Club Ass'n, Inc. v. State Farm*, 980 F.2d 1402, 1405 (11th Cir. 1993).

[15] *See 633 Partners*, 300 F. App'x at 785 (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985)); *see also Jones*, 908 So. 2d at 444 ("Any doubt with regard to the duty to defend must be resolved in favor of the insured.")

[16]No party has challenged the COL or Exclusion Claims Rulings, and Plaintiff's challenges to the Occurrence, Property Damage, and Duty to Defend Rulings were

Nonetheless, Plaintiff may still prevail against DiMucci by establishing that an exclusion applies. Here, Plaintiff faces a "heavy" burden to demonstrate that the allegations of the Towers Complaint are "cast solely and entirely within the [Your Work Exclusion] and are subject to no other reasonable interpretation."[17] Further, any doubts must be resolved against Plaintiff.[18] In its SJ Order, the Court failed to hold Plaintiff to this heavy burden. (*See* Doc. 108.) But it does so now.

## I.     The Policies[19]

The three CGL policies provide for products completed operations hazard ("**PCOH**") coverage of one million dollars per occurrence ("**PCOH Limit**").[20] (*See* Doc. 42, ¶¶27, 29, 31; Doc. 54, ¶¶27, 29, 31; *see also* Docs. 42-5, 42-6, 42-7.) Pursuant to the PCOH provisions, the Policies cover all Property Damage "occurring away from the premises [the insured] own[s] or rent[s] and arising out of" your work except work "that has not yet been completed or abandoned."[21] (*E.g.*, Doc. 42-6, p. 41, Pt. V, ¶ 15.1.) The Your Work Exclusion—Coverage A, Section I, Paragraph 2.l.—provides that the Policies

---

unauthorized (*see supra* p. 7, n.8); thus, these portions of the SJ Order are adopted by the Court and incorporated in full by this reference. (*See* Doc. 108, pp. 17–21.)

[17] *See Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007). In its SJ Order, the Court failed to hold Plaintiff to this heavy burden. But it does so now.

[18] *See J.B.D. Const.*, 571 F. App'x 926 (citing *Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998)); *see also Lime Tree*, 980 F. 2d at 1405–07 (rejecting insurer's argument that its duty to defend was barred by an exclusion).

[19] The Policies are described in greater detail in the SJ Order. (*See* Doc. 108, pp. 2, 3, 4, BACKGROUND, Part I (reciting, among other things, the definitions of "occurrence," "property damage," and "your work") The Court adopts this portion of the SJ Order and incorporates it by reference.

[20] (*See also* Doc. 42-6, pp. 3, 37 (concerning the PCOH Aggregate Limit under Coverage A); *id.* at 32 (concerning the PCOH exception to the "Damage to Property" Exclusion).)

[21] The parties do not dispute that the work at issue was completed and has not been abandoned. (*See e.g.*, Docs. 42, 54, 55, 69, 72, 77, 81, 110, 111, 117, 118.)

don't apply to: Property Damage to **your work** "arising out of it or any part of it and included in the [PCOH]." (*Id.* at 32.) The SUBC Exception limits the Your Work Exclusion: "This exclusion **does not apply** if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (*See id.* (emphasis added).)

## II.     Towers Complaint

### A.     Factual Allegations Common to All Counts

On its face, the Towers Complaint names two different defendants ("**Defendants**"): (1) DiMucci as the "**Developer**" and "**Contractor**" of the "**Condominium**," ("which contains 132 condominium units, and appurtenant common elements"); and (2) Wayne's as the "**Roofer**" of the Condominium. (*See* Doc. 42-1, p.1 & ¶¶7–9 & 11–13.) Towers (*i.e.*, the **ASSOCIATION**) further identifies Defendants as the "general contractor" and the "subcontractor" in relation to construction of the Condominium "buildings and improvements." (*See id.* ¶¶12–13.) In paragraphs nine and ten, Tower further alleges that:

> 9.    The causes of action alleged herein concern matters of common interest to the Condominium's unit owners, including but not limited to, areas of the common elements and other structural components of the Condominium, and various building components serving the Condominium, as follows:
>
> A. Roof:    Trapped moisture, bad flashing, missing coping caps, roof leaks, poor scupper installation and code issues with scuppers
>
> B. Generator Exhaust Pipe:    Exhaust becomes trapped and creates dangerous condition
>
> C. HVAC:    Design of piping and condensation lines create excessive moisture causing severe leaking
>
> D. Water intrusion and Decking/Structural issues:    Failure of waterproofing, sloping and/or joint issues with sealant allowing water into units and structural damage to decking and rebar below. Failure of expansion caulking and sealant allowing water intrusion to concrete below balconies and walkways, and creating popped/cracked tile for dangerous conditions. Complete failure of ground floor decking on entire front building driveway. Leaking into garage, waterproofing above garage, cracking, caving, splitting seams and joints, pool deck foundation separating and falling.

10. The ASSOCIATION contends that the DEFENDANTS failed to construct the Condominium in accordance with proper and approved construction plans and specifications and in accordance with good design, engineering and construction practices, and as a result the ASSOCIATION'S buildings and improvements and parcels were sold to the Unit Owners with defects and deficiencies. The defects and deficiencies of the building for which the DEFENDANTS are responsible for as of the filing of this Complaint are including, but not necessarily limited to, the following items identified in paragraph 9 above.

## B.    The Counts

The discrete counts against each Defendant are set forth in Paragraphs fourteen through sixty-five of the Towers Complaint, where Towers alleges claims based on theories of negligence, breach of various warranties, and violations of Florida Statutes, § 553.84. (*See id.* ¶¶14–49 (naming DiMucci in Counts One through Seven ("**DiMucci Counts**")); *see id.* ¶¶ 50–65 (naming Wayne's in Counts Eight through Ten ("**Wayne's Counts**")).) In support of its DiMucci Counts (for negligence), Towers alleged that DiMucci acted "by itself and through its agents, servants and employees" to—among other things—supervise, inspect and approve "the Condominium improvements." (*See id.* ¶¶26–28 (alleging that DiMucci was "careless and negligent" in "supervising" and "inspecting" the Condominium improvements).) In support of Wayne's Counts, Towers alleged that defective and deficient roofing materials ("**Roofing Materials**") were designed, constructed, and supplied by Wayne's for the Condominium construction and improvements. (*See id.* ¶¶51, 54, 58, 61, 63.)

## III.   Analysis

Again, Plaintiff argues that the SUBC Exception does not apply because Towers Complaint provides no express allegations that DiMucci used subcontractors (*see* Doc. 117, pp. 8–9.) The Court disagrees. No attenuated inferences are required to find

that, under the factual allegations of the Towers Complaint:

- DiMucci was the contractor and Wayne's was a "subcontractor";

- DiMucci "inspected" what Wayne's "supplied";

- DiMucci "approved" what Wayne's "designed"; and

- DiMucci "supervised" what Wayne's "constructed."

Given Towers' additional allegations that both Defendants were negligent in their respective conduct and Property Damage resulted, it is apparent that (1) Towers seeks to hold DiMucci liable for its own conduct and the conduct of others—including Wayne's as subcontractor; and (2) at least some of the "damaged work or the work out of which the damage arises" in the Towers Complaint was performed on DiMucci's behalf by others—particularly subcontractor Wayne's.[22] (*See* Doc. 42-1, ¶¶ 10, 12, 13, 26, 27, 28.)

Resolving all doubts in favor of DiMucci, the Court cannot find that Plaintiff has met its burden to establish that the only "reasonable interpretation" of the Towers Complaint requires application of the Your Work Exclusion." (*See supra* pp. 9–10, n.18.) Further, even if the Your Work Exclusion applied—it is apparent that the SUBC Exception also applies to negate the Your Work Exclusion.[23] Thus, Plaintiff owes DiMucci a defense of

---

[22] Based on these explicit allegations, the Court finds that the case relied on by Plaintiff—*Miranda Construction Development, Incorporated v. Mid-Continent Casualty Company*—is distinguishable because the *Miranda* insured was the only defendant sued, and the *Miranda* complaint provided "no allegations . . . that any [alleged faulty construction] work was performed by a subcontractor." *See* 763 F. Supp. 2d 1336, 1340 (S.D. Fla. 2010).

[23] *See Trizec Props., Inc. v. Biltmore Const. Co., Inc.*, 767 F.2d 810, 811–12 (11th Cir. 1985) (finding a duty to defend based on marginal and reasonable implications drawn from the factual allegations of the complaint); *see also Westport Ins. Corp. v. VN Hotel Grp., LLC*, 761 F. Supp. 2d 1337, 1346 (M.D. Fla. 2010) (resolving duty to defend dispute in favor of insured based on application of exception to exclusion).

the entire *Towers* Case.[24]

The Court reached a different holding in the SJ Order in part because—in determining whether to apply the Your Work Exclusion—the Court declined to consider the factual allegations in the Wayne's Counts. (*See* Doc. 108, p. 19, n.15.) Plaintiff urges the Court to continue to disregard allegations concerning Wayne's because, according to Plaintiff, the law requires that the Court resolve the Coverage Dispute based "solely" on the "allegations of the complaint against" DiMucci "and not by extraneous facts alleged against" Wayne's. (*See* Doc. 117, p. 6–7; Doc. 111, p. 6.) In support, Plaintiff relies on *National Union Fire Insurance Company v. Lenox Liquors, Incorporated*, 358 So. 2d 533, 535 (Fla. 1977), *Stephens v. Mid-Continent Casualty Company*, 749 F.3d 1318 (11th Cir. 2014), and *Scheer v. State Farm Fire & Casualty Company*, 708 So. 2d 312 (Fla. DCA 1998). Such reliance is misplaced.

*Lenox* is readily distinguishable because the *Lenox* insured was the only defendant named in the underlying complaint, and there was no reference to allegations against a subcontractor or any other co-defendant in *Lenox*.[25] *See* 358 So. 2d at 535. Rather, *Lenox* concerned whether—when determining a duty to defend—courts may consider a statement in a settlement agreement that an unintentional tort would be asserted against the insured even though the actual underlying complaint alleged only an *intentional* tort.

---

[24]Insurers are obligated to defend an entire suit when even one of several alleged grounds for liability are within the insurance coverage. *See Trizec*, 767 F.2d at 811–12; *see also Tropical Park, Inc. v. U.S. Fid. & Guar. Co.*, 357 So. 2d 253, 256 (Fla. 3d DCA 1978).

[25]In the case cited in the SJ Order—*Wilshire Insurance Company v. Poinciana Grocer, Incorporated*, 151 So. 3d 55, 57 (Fla. 5th DCA 2014)—only the insured was sued and no other party was mentioned. *See id.* Thus, *Wilshire*—like *Lenox*—does not prohibit courts from considering all of the allegations in an underlying complaint—including those related to a co-defendant.

*See* 358 So. 2d at 535. Based on the Eight Corners Rule, the *Lenox* appellate court held that it was error to consider statements from the settlement. Unlike the *Lenox* trial court, this Court did not consider any document or fact outside of the Towers Complaint.

Although co-defendants were named in the *Stephens* and *Scheer* case, those cases also are distinguishable. In *Stephens* and *Scheer*, the appellate courts *reversed* when the trial courts relied on allegations concerning co-defendants to determine that the insureds were *not owed a defense. See Stephens*, 749 F.3d at 1323; *Scheer*, 708 So. 2d at 313. Here, the Court did not use co-defendant allegations against Wayne's to relieve Plaintiff of its duty to defend. Rather, the Court properly viewed the Towers Complaint as a whole to determine that DiMucci *is owed a defense.*[26] Thus, the cases cited by Plaintiff do not persuade the Court that it must ignore certain allegations in the Towers Complaint.

Finally, the Court notes that turning a blind eye to any of the factual allegations in the Towers Complaint would be at odds with Florida law. Again, courts determine the broad duty to defend by comparing policy language to the allegations of a complaint— including allegations that are incorrect or even meritless. (*Supra* p. 9, nn.13–15.) In contrast, courts determine the narrower duty to indemnify by considering the actual facts of the claim against the insured.[27] Due to this dichotomy, under Florida law, the duty to

---

[26] Unlike the analysis of the trial courts in *Stephens* and *Scheer*, this Court's analysis of the Towers Complaint was consistent with requirement that complaints be read in favor of coverage and doubts be resolved in favor of the insured (*supra* pp. 9–10, n.15; *id.* at 12–13, n.23).

[27] *See 633 Partners*, 300 F. App'x at 782 (noting that allegations in a complaint that "are inconsistent with the actual facts or completely meritless" may trigger the duty to defend); *see also Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148–49 (11th Cir. 2010) (The duty to defend is "separate and distinct" from the duty to indemnify).

indemnify "cannot exist" if there is no duty to defend.[28] But here, the Court's prior disregard of certain allegations in the Towers Complaint led to the No Defense Declaration even though it is apparent from *all of allegations* of the Towers Complaint that the facts ultimately proved in the Towers Case *could* trigger Plaintiff's narrow duty to indemnify DiMucci.[29] The Court now corrects this error.

## THE SIR CLAIM

Because the Court has determined that Plaintiff does owe DiMucci a defense in the *Towers* Case, the Court must now resolve DiMucci's motion for summary judgment on Plaintiff's SIR Claim.[30] The SIR Claim seeks a judgment in Plaintiff's favor, "declaring and adjudicating that [Plaintiff] is not obligated to defend" DiMucci for damages sought in the *Towers* Case because DiMucci allegedly failed "to cooperate as required" by the SIR Endorsement. (Doc. 42-1, p. 29, ¶86.) DiMucci argues that the SIR Claim fails as a matter of law because: (1) Plaintiff is prohibited from asserting the SIR Claim because it violated Chapter 627 of the Florida Insurance Code—§ 627.426(2) ("**Insurance Code**

---

[28]Indeed, Florida courts commonly dismiss indemnification claims after resolving a corresponding duty to defend claim in favor of the insurer. *See Wilshire Ins. Co. v. Poinciana Grocer, Inc.*, 151 So. 3d 55, (Fla. 5th DCA 2014) ("[I]f a court determines that there is no duty to defend, as a matter of law, there cannot be a duty to indemnify."); *Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So. 3d 1220, 1224 (Fla. 2d DCA 2011) ("Because Essex has no duty to defend Big Top . . . Essex has no corresponding duty to indemnify."); *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 16 So. 3d 904, 906 (Fla. 2d DCA 2009) (concluding that an insurer had "no duty to indemnify" because it had "no duty to defend"); *see also New Hampshire Ins. Co. v. Hill*, 516 F. App'x 803, 805 (11th Cir. 2013) ("Because the duty to indemnify is narrower than the duty to defend, the duty to indemnify cannot exist if there is no duty to defend."); *Auto-Owners Ins. Co. v. E.N.D. Servs., Inc.*, 506 F. App'x 920, 927 (11th Cir. 2013) (same).

[29]Such an outcome is simply possible—not certain. Again, the indemnification claims are stayed in this action and the Court has no opinion on the ultimate merits of such claims.

[30]The Court incorporates by reference the summary judgment standards of review that are set out at pages 6 and 7 of the SJ Order. (*See* Doc. 108.)

**Argument**"); and (2) the evidence establishes that DiMucci "fully" cooperated with Plaintiff as a matter of law ("**Cooperation Argument**"). (Doc. 69, pp. 11–13.) Plaintiff countered that: (1) Chapter 627 is inapplicable because Plaintiff is a "surplus" carrier; and (2) DiMucci's own evidence establishes that DiMucci failed to cooperate by refusing to accept the counsel offered by Plaintiff in lieu of DiMucci's previously retained counsel. (*See* Doc. 81.) These arguments are addressed below.

## I.    Insurance Code Argument

Pursuant to § 627.426(2), a liability insurer is prohibited from asserting a "particular coverage defense" unless: (a) they provide written notice of any reservation of rights ("**ROR**") to the insured no later than 30 days after learning of the particular coverage defense (§ 627.426(2)(a)); and (b) within sixty days of any ROR notice or receipt of a summons and complaint against its insured, the insurer—(1) gives written notice to the insured of any refusal to defend the insured (§ 627.426(2)(b)(1)); (2) obtains a "nonwaiver agreement" from the insured after providing certain disclosures concerning the insurer's "duties, obligations, and liabilities" (§ 627.426(2)(b)(2)); and (3) retains "independent counsel which is mutually agreeable to the parties (§ 627.426(2)(b)(3)). Plaintiff does not dispute that it did not comply with these statutory requirements; rather, it contends that Chapter 627 is inapplicable because Plaintiff "is a surplus lines carrier" (see Doc. 81, p. 7; *but see* Doc. 70, p. 121 (applying Chapter 627 to resolve dispute over counsel in the *Towers* Case).)[31] Plaintiff's argument is legally valid,[32] but it is factually unsupported.

---

[31]In its Amended Complaint, Plaintiff alleged that it "was a Surplus Lines Carrier in Illinois, authorized to sell insurance in the State of Illinois. (*See* Doc. 42, ¶ 7.) In its Answer, DiMucci responded that it "is without knowledge" as to such allegation. (*See* Doc. 54, ¶ 7.)

[32]*See* Fla. Stat. § 626.913(4); *see also Lumpuy v. Scottsdale Ins. Co.*,

In Florida, a "surplus line" insurer is prohibited from acting as an authorized insurer in Florida because it has not been issued a certificate of authority ("**Certificate**") by the Office of Insurance Regulation ("**Office**"). Fla. Stat. § 624.401(1); *id.* § 626.910; *see id.* § 624.302. An "'eligible surplus lines insurer'" is an unauthorized insurer who "has been made eligible by the Office to issue insurance coverage under" Florida's "Surplus Lines Law," (*see* Fla. Stat. § 626.914(2)), which is set forth in §§ 626.913 through 626.937. *See* Fla. Stat. § 626.937(1); *see also id.* § 626.915. Presumably, both DiMucci and Plaintiff could have obtained and submitted admissible evidence showing whether the Office has issued a Certificate to Plaintiff or has authorized Plaintiff to issue coverage under the Surplus Lines Law. *See* Fla. Stat. §§ 624.303, 624.311(1), 624.312 (requiring the Office to maintain records). Neither did.[33] Hence, DiMucci's SJ is due to be denied to the extent it relies on § 627.426.

## II.   Cooperation Argument

### A.   The Legal Standards

To prevail on its SIR Claim, Plaintiff must establish that: (1) DiMucci breached the SIR Endorsement; (2) DiMucci's breach was material and it resulted in substantial prejudice to Plaintiff; (3) Plaintiff "exercised diligence and good faith in seeking to bring about the cooperation of [DiMucci];" and (4) Plaintiff "has in good faith complied with the terms and conditions of the policy."[34] Offering to provide a defense to an insured under a

---

No. 8:11-cv-2455-T-24MAP, 2013 WL 489139, at *3 n.1 (M.D. Fla. Feb. 8, 2013).

[33]At numerous places in the record, the parties reference the applicability of § 627.426. Indeed, in the *Towers* Case, the State Court issued its declaratory decree on the basis of 627.426. (*See* Doc. 70, pp. 120–21.) Nonetheless, neither side has supplied any evidence, as opposed to argument, as to the applicability of the statute or whether this issue is being raised here for the first time.

[34]*See Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976); *see also Mid-*

ROR is not a policy breach; thus, insurers who do so retain their right to control the defense.[35] In contrast, the unjustified refusal to defend an insured *is* a policy breach that "relieves the insured" of its obligation to allow the insurer to control its defense and justifies it in assuming such defense itself.[36] With these standards in mind, the Court turns to the record evidence.

## B.    The Record Evidence

In support of its SJ briefing, DiMucci submitted a limited collection of documents and affidavits. (Doc. 69, pp. 24–181; Doc. 70.) Plaintiff submitted no evidence at all,[37] and neither party provided "pinpoint citations to the pages and lines of the record supporting each material fact" as required by the CMSO. (*See* Doc. 36, p. 6 (requiring pinpoint citations).) Notwithstanding the scattered and incomplete evidentiary record, the Court has labored through the disjointed submissions and briefly summarized it below.

### 1.    The SIR Endorsement

The SIR Endorsement requires that DiMucci "cooperate" with Plaintiff, and upon

---

*Continent Cas.*, 601 F.3d at 1149–50.

[35] *See Cont'l Cas. Co. v. City of Jacksonville*, 283 F. App's 686, 689–90 (11th Cir. 2008); *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743, 745 (Fla. 1st DCA 1978) (Insureds are "not required to abandon control of [its] own defense as the price of preserving" its coverage claim.").)

[36] *See Travelers Indem. Co. of Ill. v. Royal Oak Enterps., Inc.*, 344 F.Supp.2d 1358, 1369–70 (M.D. Fla. 2004), *aff'd*, 17 F. App's 831 (11th Cir. 2006); *see also Philadelphia Indem. Inc. Co. v. Kohne*, 181 F. App'x 888, (11th Cir. 2006). Negligence or bad faith in providing a defense also constitutes a policy breach, "entitling the insured to recover all damages naturally flowing from the breach." *See Royal Oak*, 344 F.Supp.2d at 1369 (noting that insurers are required to provide insureds "an adequate defense").

[37] Plaintiff's Response should have specified—with pinpoint citations to the pages and lines of the record—each material fact that creates a "genuine issue for trial." (*See* Doc. 36, p. 6, Part II.H.1.) Plaintiff's Response also should have been "accompanied by affidavit(s) and other evidence in the form required by Fed. R. Civ. P. 56." (*See id.*) Plaintiff's Response did neither.

Plaintiff's "request, assist in making settlements, in the conduct of suits, and in enforcing any right of contribution . . . ."  (Doc. 42-6, pp. 12–13, ¶5(d).) The SIR Endorsement also set forth the agreed amounts of self-insured retention ("**SIR**") for each of the Policies: (1) $50,000 per occurrence ("**$50K SIR**") for the 2004 and 2005 Policies; and (2) $25,000 per occurrence ("**$25K SIR**") for the 2003 Policy. (*Id.*) Pending satisfaction of the applicable SIR, the SIR Endorsement required that DiMucci "provide, at his own expense, proper defense and investigation of any claim." (Doc. 42-6, p. 11, ¶2.) At the same time, the SIR Endorsement affords Plaintiff "the right, but not the duty, in all cases to *assume charge* of the investigation, defense and/or settlement of any claim." (*Id.* at 12, ¶4 (emphasis added).)

### 2.    The Initial Notice & Communications

At an unspecified time after receiving the Towers Complaint from Plaintiff, DiMucci "engaged his local construction attorney—LaRue Williams ("**Williams**")—to represent DiMucci in the *Towers* Case. (*See* Doc. 70, pp. 114; *id.* at 123–24, ¶¶3, 5.) On **August 31, 2012**, Williams "received a copy of a letter sent to" DiMucci concerning Towers' claim against DiMucci ("**August Letter**"). (*See id.* at 4–5, ¶3.) The August Letter came from Plaintiff's representative—Timothy McDonald ("**McDonald**"), who was a "Claims Representative for Markel Insurance Services ("**Markel**").[38] (*See id.*)

Williams obtained a copy of the Towers Complaint, and he sent it to McDonald on **January 9, 2013** ("**January e-mail**"). (S*ee id.* at 5, ¶¶4, 5.) McDonald acknowledged receipt of the January e-mail ("**Receipt e-mail**") (*see id.* at 5, ¶5; *id.* at 9), and the two

---

[38](*See also* Doc. 70, p. 16 ("Markel . . . on behalf of [Plaintiff] previously acknowledged receipt of the claim presented on behalf of [Towers].).)

then "had a telephone conference" to discuss Williams' qualifications, experience, and litigation plan. (*See id.* at 5, ¶5.) Williams avers that McDonald advised that "he would not need regular updates but to let him know when any significant matters occurred in the litigation and when [Williams] was able to assess [Towers'] claimed damages and the exposure to [DiMucci]." (*See id.*)

### 3.    The First ROR

On **February 25, 2013**, Williams received Plaintiff's first ROR letter ("**First ROR**") from McDonald. (*See id.* at 2–3, ¶7; *id.* at 16–29.) The First ROR advised that Plaintiff would "monitor this claim within the [SIR] under a full ROR, and it reserved Plaintiff's "right to investigate this matter and deny coverage for any damages that are not covered" under the Policies. (*See id.* at 16.) After quoting the Policies at length, Plaintiff denied that it had any present duty to defend DiMucci. *See id.* 17 (asserting that "satisfaction of the SIR is a condition precedent" to coverage, and to date, "there is no indication that the SIR has been satisfied and therefore, there is no present obligation for [Plaintiff] to defend [DiMucci]" in the Towers Action).) Plaintiff requested that Markel be notified of information indicating that DiMucci "has satisfied or will satisfy the [SIR] on each [P]olicy by paying $50,000.00 of its own funds toward its defense and/or indemnity" of the Towers Action. (*See id.* at 28.)

Williams responded to the First ROR in correspondence dated **March 19, 2013** ("**March 2013 e-mail**"), which: (1) provided a copy of his curriculum vitae; (2) advised that he would respond to the Towers Complaint on behalf of DiMucci; and (3) promised to provide "periodic reports" in accordance with the "policies described" in the First ROR. (*See id.* at 3, ¶8; *id.* at 31–33; *see also id.* at 34 (acknowledging receipt of the March 2013

e-mail).) Eight months later, Williams advised Plaintiff that **$11,512.64** "in fees and costs [had] been incurred to date" by DiMucci ("**SIR Update**"). (*See id.* at 36; *see also id.* at 6, ¶¶ 8, 9.)

### 4.    Plaintiff's Selection of Attorney DeCandio

On **March 18, 2014**, Markel sent electronic mail to Williams advising that it had selected attorney Michael DeCandio ("**DeCandio**") to defend DiMucci in the Towers Action because the "SIR is close to satisfaction." ("**March 2014 e-mail**"). (*See id.* at 38; *id.* at 6, ¶ 10.) Markel requested that Williams: (1) provide "back up" on satisfaction of the SIR "as soon as practicable;" and (2) advise if DiMucci objects to DeCandio so that "we can visit some alternatives acceptable to Markel." (*See id.* at 38.)

Two days later Williams received a letter from Plaintiff's attorneys, Butler Pappas ("**March 2014 Letter**"), which advised that Plaintiff: (1) denied it had any "obligation to appoint counsel prior to the exhaustion of the SIR;" and (2) denied it "consented" or "objected" to DiMucci's "choice of counsel as the duty to defend is wholly [DiMucci's] until the SIR is exhausted."[39] (*See id.* at 13 (denying that Plaintiff ever "agreed to [Williams'] ongoing representation of [DiMucci]").) Plaintiff further advised that it "is exercising its right, pursuant to paragraph 4 of the SIR [E]ndorsement, to assume control of the defense" of the Towers Action and to appoint DeCandio as defense counsel "at this time." (*See id.* at 10–14.) Finally, Plaintiff asked Williams to confirm whether DiMucci "continues to decline 'to agree to'" any counsel other than Williams being appointed for DiMucci's

---

[39] Plaintiff also denied that it had any "obligation to appoint counsel prior the DiMucci's "exhaustion of the SIR," which "is a condition precedent to coverage" under the Policies. (*See id.* ("Pursuant to paragraph 2 of the SIR [E]ndorsement," DiMucci is obligated to provide for its own defense "until such time as the SIR is exhausted.").)

defense, or whether "DeCandio, or alternative counsel acceptable" to Plaintiff, is also acceptable to DiMucci. (*See id.*)

### 4. The Second ROR

On **September 16, 2014**, Plaintiff sent a supplemental ROR to DiMucci (*id.* at 40–53 ("**Second ROR**")), which advised that:

> (1)   the Second ROR was "intended to replace" the First ROR (*id.* at 41);
>
> (2)   the 2003 Policy provided no coverage to DiMucci because DiMucci was "not an insured under" that Policy (*id.* at 42, 49); and
>
> (3)   under the remaining Policies, Plaintiff accepted DiMucci's "tender of its defense, subject to the terms" of the Second ROR, including satisfaction" of the $50K SIR (*id.* at 40–41).

Notwithstanding Plaintiff's acceptance of DiMucci's tender, it again asserted that it had "no present obligation to defend DiMucci" because it had no information or documentation showing that the SIR has been satisfied. (*Id.* at 50–51.) Plaintiff further advised that:

> (1)   "[u]pon proof of exhaustion" of the $50K SIR, Plaintiff "will defend" DiMucci "subject to all reservations rights stated herein;" and
>
> (2)   "[u]pon satisfaction of the SIR," Plaintiff has retained a specified "attorney and law firm to defend DiMucci" in the *Towers* Case.

(*Id.* at 50–51 (identifying DeCandio as DiMucci's new defense counsel).)

Plaintiff also requested again that DiMucci advise Plaintiff: (1) when the $50K SIR "has been satisfied;" and (2) whether DiMucci "wishes to retain its own attorney." (*Id.* at 52.) Finally, Plaintiff advised that: (1) if DiMucci accepts Plaintiff's defense, then potential conflict[s] of interest" may develop between Plaintiff and DiMucci based on various

coverage issues; and (2) if Williams continues to represent Plaintiff, then Plaintiff "would have the ability to retain additional counsel to participate in your defense; however, [it] would not control the defense."[40] (*Id.* at 51–52.) Before DiMucci received the Second ROR, Plaintiff filed this action against DiMucci on **September 17, 2014**. (*See id.* at 7, ¶13.) Thereafter, Plaintiff "demanded to take control of the defense in the [Towers Action]" and it unsuccessfully attempted in the State Court to force the replacement of Williams.[41] (*See id.* ¶14.)

### C.   Analysis

Based on this partial record of the pertinent communications between the parties, DiMucci argues that Plaintiff cannot prevail on its SIR claim because the record evidence shows that: (1) DiMucci provided "timely notice" of the Towers Complaint to Plaintiff; (2) DiMucci "timely" responded to requests concerning the *Towers* Case; (3) DiMucci apprised Plaintiff as to DiMucci's retention of counsel and exhaustion of the SIR; and (4) no prejudice to Plaintiff resulted from DiMucci's refusal to replace Williams. (Doc. 69, pp. 11–12.) Plaintiff responded that the record evidence actually shows that: (1) DiMucci failed to cooperate "by not permitting [Plaintiff] to select defense counsel"; (2) on multiple occasions, Plaintiff "diligently and in good faith renewed its efforts to select defense

---

[40] William avers that he told Plaintiff that he would reduce "his hourly rates for fees to be consistent with rates approved by [Plaintiff] for its other litigation matters" (*see* Doc. 70, p. 8, ¶15), but Plaintiff "never provided DiMucci or [Williams] with a reasonable explanation as to why [Williams] should not or could not continue to defend [the Towers Action] on behalf of DiMucci" (*see id.* at 7–8, ¶14).

[41] On **July 17, 2015**, attorney Gary F. Baumann ("**Baumann**") filed a notice of appearance in the *Towers* Case, which, among other things, advised that he represented DiMucci. (*See* Doc. 70, pp. 110–11.) After hearing argument from the parties on the matter, the State Court ordered that Williams would continue as counsel for DiMucci. (*See id.* at 120–21.)

counsel" despite DiMucci's failure to cooperate; and (3) despite "repeated requests for information, none was received." (*See* Doc. 81. p. 13; *see also* Doc. 117, p. 9.)

Many of the issues raised by the parties' respective arguments present questions of fact that should not be resolved on a motion for summary judgment.[42] In particular, the issue of Plaintiff's diligence and its "good faith" compliance with the Policies is in significant dispute because the record shows that Plaintiff's repeated assertions that it need not provide a defense to DiMucci until exhaustion of the $50K SIR were simply wrong. As Plaintiff now concedes, DiMucci is an insured under the 2003 Policy, which had a $25K SIR. Thus, once DiMucci expended $25,000 of its own money on its defense, Plaintiff had a duty to defend DiMucci. Based on the SIR Update, the March 2014 e-mail, and the Second ROR, a fact-finder could determine that Plaintiff did not do so, and such failure constituted a breach of the duty to defend, which relieved DiMucci of its duty to allow Plaintiff to control the defense of the *Towers* Case. (*See supra* pp. 18–19. n.35; *see also* Doc. 70, p. 124, ¶¶ 6–8.) At a minimum, the failure reflects an absence of diligence on the part of Plaintiff.

The Court also cannot presently determine whether DiMucci's retention of Williams even constituted a material breach of the SIR Endorsement. As noted above—pending satisfaction of $25K SIR—DiMucci's initial retention of Williams was entirely consistent

---

[42] *See Mid-Continent Cas. Co.*, 601 F.3d at 1150 (reversing summary judgment for insurer); *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1338–39 (S.D. Fla. 2010) (denying summary judgment on cooperation claims due to questions of fact); *Aguero v. First Am. Ins. Co.*, 927 So. 2d 894, 897–98 (Fla. 3d DCA 2005) (reversing summary judgment for insurer where questions of fact existed concerning the contents of certain communications between the insurer and insured); *Haiman v. Fed. Ins. Co.*, 798 So. 2d 811, 812 (Fla. 4th DCA 2001) (finding numerous disputed issues of fact as to the materiality of insured's breach and the good faith and diligence of the insurer).

with the SIR Endorsement.[43] (Doc. 42-6, p. 11, ¶ 2.) Under these circumstances, it is not apparent that Plaintiff's right to "assume control" of the defense included the right to replace Williams without cause.[44] This is particularly so here because the record includes no evidence that Plaintiff: (1) explicitly warned DiMucci that its selection of counsel would be temporary; (2) provided guidance to DiMucci concerning selection of counsel that might insure continuity of representation once the $25K SIR was met (*see* Doc. 70, p. 2, ¶6); or (3) explain why the interests of DiMucci or Plaintiff would be better served by replacing Williams with DeCandio or Baumann. Thus, a fact-finder could easily reject Plaintiff's contention that DiMucci breached the SIR Endorsement by refusing to replace Williams with Baumann or DeCandio.

Even if a fact-finder determined that DiMucci violated the SIR Clause by retaining Williams in lieu of Baumann or DeCandio, Plaintiff still must establish that it suffered "substantial prejudice" as a result of DiMucci's breach.[45] Here, Plaintiff contends that

---

[43]For this reason, *Maronda Homes, Incorporated of Florida v. Progressive Express Insurance Company*, 118 F. Supp. 3d 1332 (M.D. Fla. 2015)—which is discussed at length in Plaintiff's Response—is distinguishable. (*See* Doc. 81, pp. 10–11.)

[44]Plaintiff seemingly equates its right to "*assume control*" of DiMucci's defense with a right to *replace* counsel already retained by DiMucci in accordance with the terms of the SIR Endorsement. But that is not the only or even most likely meaning of the SIR Endorsement given that "assume" means "to adopt" or "take upon oneself." WEBSTER'S II NEW RIVERSIDE DICTIONARY, 132 (1994).

[45]Florida law is well-settled that:

Not every failure to cooperate will release the insurance company [from its duties]. Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay. The question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but under some circumstances, particularly where the facts are admitted, it may well be a question of law.

DiMucci's rejection of "counsel selected by" Plaintiff has caused it substantial prejudice because Plaintiff cannot: (1) "protect its interest in the financial outcome of litigation'" or (2) "protect itself against unwarranted liability claims." (*See* Doc. 81, pp. 12–13.) In support of these contentions, Plaintiff points to no evidence that Williams' efforts in the *Towers* Case have been deficient in any way.[46] Plaintiff also points to no evidence that any conflicts between DiMucci and Plaintiff have "actually affected" Williams' defense of the *Towers* Case.[47]

Plaintiff's highly-generalized arguments simply presume prejudice because "the right to select counsel and control the defense is a valuable right." (Doc. 81, p. 13.) But no presumption of prejudice applies in claims for breach of a cooperation clause.[48] At bottom, Plaintiff must establish that a material issue of fact is present in the record suggesting that the failure to permit DeCandio or Baumann to replace Williams was materially adverse to the interest of Plaintiff. This they have failed to do. Thus, Plaintiff's

---

*Ramos v. N.W. Mut. Ins. Co.*, 386 So. 2d 71, 75 (Fla. 1976).

[46]In contrast, DiMucci's SJ relies on evidence that: (1) after being provided with information concerning Williams' credentials, experience, and litigation plan, Plaintiff voiced no objections or concerns as to Williams' representation of DiMucci; (2) Williams has competently represented Plaintiff in the *Towers* Case; and (3) Williams offered to work on the *Towers* Case at the same rate that Plaintiff would pay other counsel. (*See supra* pp. 20–22, 24, n.40; *see also* Doc. 70, p. 124, ¶¶9–10.) This showing triggered Plaintiff's duty to establish that a question of fact exists concerning the substantial prejudice element of its SIR Claim.

[47]*Cf. Royal Oak*, 344 F. Supp. 2d at 1374–75 (declining to recognize a presumption that the defense of a covered claim is materially affected by "potential" conflicts between an insured and insurer).

[48] "In a breach of cooperation clause case . . . the insurer must show a material failure to cooperate which *substantially prejudiced* the insurer." *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985); *see also State Farm Mutual Auto. Ins. Co. v. Curran*, 135 So. 3d 1071, 1079 (Fla. 2014) (noting that the insurer bore the "burden of pleading and proving" prejudice); *Rustia v. Prudential Prop. & Cas. Ins. Co.*, 440 So. 2d 1316, 1318 (Fla. 3d DCA 1983) (reversing summary judgment for insurer on duty to cooperate claim due to insufficient evidence of prejudice).

unsupported and highly-generalized arguments fail to raise any question of fact that would preclude summary judgment on its SIR Claim.

## CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED**:

(1)     Defendant/Counter-Plaintiff, DiMucci Development Corporation of Ponce Inlet, Inc.'s, Motion for Reconsideration of Order Granting Summary Judgment on Behalf of Evanston Insurance Company and Incorporated Memorandum of Law (Doc. 110) is **GRANTED**.

(2)     Plaintiff Essex Insurance Company's Motion for Final Summary Judgment (Doc. 72) is **DENIED**.

(3)     Defendant/Counter-Plaintiff, DiMucci Development Corporation of Ponce Inlet, Inc's, Motion for Final Summary Judgment and Incorporated Memorandum of Law (Doc. 69) is **GRANTED**.

(4)     With respect to the duty to defend only, summary judgment is entered against Plaintiff and in favor of Defendant on all eleven counts of Plaintiff's Amended Complaints (Doc. 42).

(5)     The Clerk is **DIRECTED** to reopen this action.

(6)     The parties are **DIRECTED** to confer and, on or before **February 13, 2017**, file a joint notice with the Court concerning the additional proceedings required to resolve the parties remaining disputes.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on February 6, 2017.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record